# EXHIBIT I

# Report of Robert Gill

**[with a copy of his current Vita attached,
and with copies of some items
he may use as exhibits attached].**

LAW OFFICES OF

**BOB GILL**
RETIRED STATE DISTRICT JUDGE
BOARD CERTIFIED - CRIMINAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

**D. MILES BRISSETTE**
BOARD CERTIFIED - CRIMINAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
BOARD CERTIFIED - CRIMINAL LAW SPECIALIST
NATIONAL BOARD OF TRIAL ADVOCACY

# GILL & BRISSETTE
(NOT A PARTNERSHIP)

2502 GRAVEL DRIVE
FORT WORTH, TEXAS 76118
(817) 803-6918
FACSIMILE (817) 554-1534

**HEATHER NERING**
PARALEGAL

**YEZENIA HERNANDEZ**
LEGAL SECRETARY

**RE:   Civil Action No. 3:20-CV-02826-L**; **Jimerson, et al v. Lt. Lewis, et al**

8   March   2021

Mr. Ernest ("Skip") Reynold III
314 Main Street, Ste 202
Fort Worth, Texas 76102

RE:   Jimerson-Parks case : CIVIL ACTION NO. 3:20-CV-02826-L

Mr. Reynolds:

I am sending this letter to you pertaining to the above captioned case in which I know you represent the Jimerson-Parks plaintiffs. This is a letter which I know will be used for legal purposes. This letter contains factual background about my training and qualifications, about materials I have reviewed, and what I have done to analyze this matter up to this time. This letter also contains certain opinions that I have formulated which are legal opinions based upon my factual knowledge, and my legal knowledge and expertise.

All of my opinions are based upon "reasonable legal probability." The opinions are based upon information currently available to me, and are based upon my professional experience and expertise, and are based upon my knowledge of law which is relevant or pertinent to the opinions.

I have been retained to serve in this case as an expert. I am being paid by the hour at a rate of **$250.00** per hour, and do not own any part of any claim asserted in this case, and have no contingent interest in the outcome of this case.

During the past four years I have testified zero times at trial.

During the past four years I have testified zero times as a deposition witness.

Report Letter/Jimerson-Parks case
8 March 2021
page - 2 of 22
----------------------------

    My qualifications are summarized on my VITA (3 pages) which is attached hereto as **EXHIBIT H** (and made a part hereof). I will not now re-state everything in the VITA. I am presently in private law practice, and have been since January, 2015. I practice law with another attorney, and we maintain our office in Fort Worth, Texas. I am a Board Certified specialist in criminal law. I am an attorney licensed for many years (since 1981) continuously (and presently) to practice law in Texas. I am admitted to practice in some federal courts, including the federal courts in the Northern District of Texas. My VITA lists many of my speaking engagements, and lists several publications I have authored. I was for many years (1981-1992 and 2008-2014) an assistant district attorney in Tarrant County, Texas. I left that position (later returning to it after retiring from the bench, and some years later retiring from that position to enter private law practice). I served over fourteen years as an elected Texas state district court judge in a court dedicated to handling criminal cases in Fort Worth, Tarrant County, Texas. During my time as a judge of the 213th Criminal District Court (from January, 1993 to May, 2007), I also served as Local Administrative Judge of Tarrant County between 1997-1998 and 2003-4. I also served as Presiding Judge over Tarrant County Criminal Courts in 1997. I have direct experience with all aspects of criminal law and procedure in Texas from the perspective of attorney (in district attorney office, and more recently in private practice) and judge (during my time on the bench). In this connection, I also have knowledge and expertise regarding rights and liberties protected and guaranteed to citizens under provisions of the United States Constitution (including the Fourth and Fourteenth Amendments to that constitution) and corresponding limitations on the powers and authority of law enforcement officials (including police officers and detectives and investigators and attorneys and judges and police departments and prosecutor's offices such as district attorney's offices, and various law enforcement offices and agencies and units of state and local government). During my time in the Tarrant County District Attorney's Office, in addition to directly handling and trying many cases, I also had training and supervisory responsibilities and supervised the work activities of other attorneys and their staff assistants, including investigators. I know that criminal investigations should be conducted with appropriate care to assure that criminal charges are not brought improperly against citizens, and to insure that search and seizure warrants are not either sought or executed improperly. I am familiar with all aspects of the grand jury process. I know the processes for obtaining warrants to search, warrants to seize, and warrants to arrest. I know that warrants must be sufficiently detailed and focused, and that a warrant for one thing is not a blanket permit to do other things. I am familiar with arrest and detention procedures, and with procedures for determining whether probable cause exists in connection with a particular situation, and with procedures for pressing and bringing criminal charges against persons. I am familiar with the procedures for investigating to determine whether crimes

Report Letter/Jimerson-Parks case
8 March 2021
page - 3 of 22
----------------------------

have occurred and whether to press charges against any particular person. I am familiar with the Texas Penal Code, and know (among other things) that it defines, as separate crimes and offenses, criminal trespass, and assault, and aggravated assault, and official oppression. I am also familiar with the Texas Code of Criminal Procedure and know the rules for obtaining search warrants and arrest warrants. I know the law and rules relating serving and/or executing such warrants. I have some familiarity with what S.W.A.T. TEAMS do, and how federal-state law enforcement personnel sometimes work together on task forces, and I know that in such situations the rights of people which are protected by the Constitution and other laws are still protected, and those protections may not be ignored, and are not somehow suspended, and the protected rights of the people must be fully and properly protected and respected by all officers and personnel who are serving as members of any S.W.A.T. TEAM or of any such task force.

I have reviewed, and will attach to this letter as exhibit items, all of the following :

**EXHIBIT A** : Aerial Map of Jimerson Home v. Warrant Location [they are not "next door"]

**EXHIBIT B** : 11 pages from 11 separate defense pleadings filed in this case [by attorney Montgomery] showing admissions of Lt. Lewis and the ten other Waxahachie P.D. members who are defendants [Behringer, Dunn, Fuller, Glidewell, Gonzales. Koch, James Lewis, Sanders, Taylor, and Young] that they improperly entered plaintiffs' home without a warrant

**EXHIBIT C** : Probable Cause Affidavit [filed in a Texas State Court, not in a federal court; does not mention or refer to any plaintiff and does not mention or refer to plaintiffs' home]

**EXHIBIT D** : the two (2) Search Warrants [issued out of a Texas State Court, by a Texas State Judge, in Dallas; they do not mention or refer to any plaintiff or mention or refer to any person, and do not mention or refer to plaintiffs' home or its address in any manner; but they do mention two (2) other locations specifically and by their specific addresses]

**EXHIBIT E** : Filed returns on two (2) Search Warrants [filed in a Texas State Court, in Dallas, not in a federal court; they do not mention or refer to any plaintiff or mention or refer to any person, and do not mention or refer to

Report Letter/Jimerson-Parks case
8  March 2021
page - 4 of 22
----------------------------

plaintiffs' home or its address in any manner; but they do mention two (2) other locations specifically and by their specific addresses]

**EXHIBIT F** : Home Repair Records/Invoices/some photos [all pertaining to plaintiffs' home]

**EXHIBIT G** : Ambulance Records

**I have also reviewed** the current complaint pleading [DOC. 16 ~ the Amended Complaint]; and I have obtained some general background information from lead counsel for the plaintiffs.  I am aware that plaintiffs have served written discovery upon all defendants, and I know that the defendants have been resisting discovery, and that thus far they have not filed and served answers to the written discovery, and it has not been possible to take deposition testimony. I am aware that plaintiffs are pressing for discovery, and I understand that when, if, and as they may obtain discovery from the defendants [and their attorney, Mr. Montgomery] they will be able to provide further information to me so that I may review it. My understanding of the facts of this case are based upon the information currently available to me.

-------------------------------------

**I may use any of the above-referenced exhibit items as exhibits** in connection with any testimony I may give in this case.  I may also use the Texas Penal Code, the Texas Code of Criminal Procedure (and any pertinent parts thereof) and the United States Constitution (especially; but not limited to, its Fourth and Fifth and Fourteenth Amendments) as exhibit items.

----------------------------------

Based upon my review of information, I believe that I know and understand many facts about this case.

The defendants have admitted that on the occasion in question they were all experienced law enforcement officers; so they should have known about the laws that protect the rights of citizens like the plaintiffs, including the Fourth Amendment prohibition regarding warrantless searches and seizures, and the various Texas laws that prohibit assault, and aggravated assault, and criminal trespass, and official oppression; and the defendants

Report Letter/Jimerson-Parks case
8 March 2021
page - 5 of 22
----------------------------

must have known that these were all well established laws by the time of the occasion in question, and that these laws limited what any law enforcement officer could do in order to safeguard the rights and liberties of members of the public, including the right to be safe and secure in the sanctity of their homes.

I know that in this case there was no warrant that gave any defendant any right or authority or power to disturb the peace of the plaintiff's home, or to invade it, or to ram down its front door, or to damage it; and there was no warrant that made any reference to that home, or to the address of that home, or to the address of any home "next door" to it. I also know that any warrant the defendants may have had was a Texas State warrant, and was not a federal court warrant, and was requested by a Texas police officer [a member of the Dallas P.D.].

I know that in this case there was no warrant that gave any defendant any right or authority or power to disturb the peace of the plaintiffs' home, or to invade it, or to ram down its front door, or to damage it, or to search it [or search any part of it] on the occasion in question, or at any time ever; and there was no warrant that made any reference to that home, or to the address of that home, or to the address of any home "next door" to it.

I also know that any warrant the defendants may have had was a Texas State warrant, issued by a Texas State judge in Dallas, and was not a federal court warrant, and was requested by a Texas police officer [a member of the Dallas P.D.] who made the request to a Texas State judge, and was issued in Dallas County, Texas, by a Texas State Judge. I know that the probable cause affidavit used by that officer to obtain the warrants [there were two of them, and neither of them mentioned the plaintiff's home or its address in any way] that the defendants were supposed to be serving/executing on the occasion in question made no mention at all of the address of the plaintiff's home or of the names of the plaintiffs or of the plaintiffs or of the names of any persons.

I know that in this case there was no warrant that gave any defendant any right or authority or power to disturb the peace of the plaintiffs, or to search any plaintiff, or to seize any plaintiff, or to restrain any plaintiff in any way, or to detain any plaintiff in any way, on the occasion in question, or at any time ever; and there was no warrant that made any reference to any of the plaintiffs, or mentioned the name of any plaintiff, or mentioned the name of any person.

Report Letter/Jimerson-Parks case
8  March 2021
page - 6 of 22
----------------------------

I also know that on the occasion in question there was no probable cause to disturb the plaintiffs, or to attack their home, or to detain any plaintiff, or to search any plaintiff, or to restrain any plaintiff, or to enter the home of the plaintiffs, or to search the home [or any part of the home] of the plaintiffs.

The case arises from a S.W.A.T. TEAM activity which, without any warrant, and without any probable cause, invaded the home of the plaintiffs. The occurrence date was 27 March 2019. The location invaded was 593 West 8th Street, Lancaster, Texas (75146). A nearby house where there apparently had  been problems of a criminal nature is located at 573 West 8th Street, Lancaster, Texas. That nearby house is not "next door" to the location of the plaintiffs' home, but both homes are on the same street.  Both are single family dwellings, and each is on its own lot, and has its own address. **PLEASE SEE EXHIBIT A [attached hereto ~ aerial map].** The plaintiffs had no connection with the other home, and the warrant that the defendants had referred specifically to the other home, by its address, and the warrant made no reference to the plaintiffs' home.

The plaintiffs were at [and inside of] their home, which they rented, in Lancaster, Texas, on the evening of 27 March 2019, when their home [as described more fully in the filed complaint pleading] was attacked and invaded by a S.W.A.T. TEAM, which made a "no knock" entry in the dark of night.  The invaders destroyed and/or damaged some personal property of Plaintiffs.  The activities of the S.W.A.T. TEAM were very loud and scary, and once they entered the defendants did not quickly leave. The defendants were armed with dangerous weapons and the plaintiffs were frightened. **The defendants have each filed a pleading in which they each admit that they entered the home of the plaintiffs. PLEASE SEE EXHIBIT B [attached hereto~a copy of the set of the pertinent pages from those pleadings].** While inside the plaintiffs' home the defendants took control in a manner hostile to plaintiffs, and which in effect made plaintiffs unable to move freely just as though they were prisoners.  At least one plaintiff's hands were tied up using "flex cuffs" (zip ties) instead of handcuffs, and at least one bedroom was searched by the defendants, and Ms. Jimerson was forced to lie on the floor in the doorway between the bathroom and the hallway without any clothing on from her waist down for an extended period of time, and several of the plaintiffs sustained some sorts of injuries and the defendants treated and handled the plaintiffs roughly and at least two of the plaintiffs had to be taken out of the home by ambulance and delivered to a hospital emergency room because of all of this activity carried on by the defendants.

Report Letter/Jimerson-Parks case
8 March 2021
page - 7 of 22
----------------------------

The warrant documentation clearly showed the addresses made the subject of the warrants to be addresses other than Plaintiffs'. Also, neither warrant mentioned any person. **PLEASE SEE EXHIBIT C [attached hereto~ a copy of the probable cause affidavit], and EXHIBIT D [attached hereto~ copies of the two (2) search warrants obtained by use of the probable cause affidavit], and EXHIBIT E [attached hereto~copies of the two (2) returns filed in connection with service/execution of those warrants]**. These records were located in Dallas County, among the state court records maintained by and for the state courts. Both warrants are search warrants. Both warrants issued out of a Texas State Court in Dallas County, Texas, and were signed by a Texas State judge. There does not appear to be reason to believe there are any such warrant or return document filed with, or issued from, any federal court in connection with any matter relating to the problems experienced by the Jimerson-Parks plaintiffs, which are the problems addressed in their present civil rights lawsuit.

The plaintiffs had done nothing wrong.

The plaintiffs were the only persons in their home when the S.W.A.T. TEAM invaded it. They endured a very frightening ordeal, and sustained some injury, and some of their property was damaged or destroyed, and the house was damaged.

There was no probable cause to invade the home of the plaintiffs, or to suspect that they had committed any crime. No arrests were made.

The S.W.A.T. TEAM had no warrant to search the home of the plaintiffs, or to search or seize any of the plaintiffs, and no application was ever made for any such warrant.

The invading officers [the defendants] were not federal employees. They were members of the Waxahachie Police Department, which is in Waxahachie, Ellis County, Texas.

The warrant(s) that the defendants were supposed to be serving/executing were for other totally separate locations/addresses. Those warrants were not federal, and did not issue from any federal court, but instead were issued in Dallas County, Texas, by a Texas State judge, based upon a probable cause affidavit signed and sworn to by an officer [Hight] who apparently was a member of the Dallas P.D. The probable cause affidavit made no mention directly or indirectly of any of the plaintiffs, or of their home [or its address....]. In fact, the warrants [PLEASE see **EXHIBIT D**~attached hereto] issued made no mention of the

Report Letter/Jimerson-Parks case
8 March 2021
page - 8 of 22
----------------------------

plaintiffs, or of their home [or its address]. No warrant made mention of any particular person [or of any person at all], but the two warrants that were signed by the Texas State judge did each specifically identify an address [neither of which was the address of the home of the plaintiffs], and one was a "no knock" warrant. **PLEASE SEE EXHIBIT C [attached hereto~ a copy of the probable cause affidavit], and EXHIBIT D [attached hereto~ copies of the two (2) search warrants obtained by use of the probable cause affidavit], and EXHIBIT E [attached hereto~copies of the two (2) returns filed in connection with service/execution of those warrants].**

The Jimerson-Parks plaintiffs are a family unit, comprised of two (2) adults [both of whom are disabled persons] and three young children [two of whom, the little boys, were pre-schoolers on 27 March 2019].

When the S.W.A.T. TEAM entered the Jimerson-Parks home they made a "no knock" entry, and they had no permission to enter, and never asked for permission to either enter or to stay in the home. They rammed in the door, and damaged it, and did other things that caused damage to the home. Afterwards the home was repaired, and it appears that the repairs were paid for by someone on behalf of the invading S.W.A.T. TEAM. Though the home was located in Lancaster, in Dallas County, Texas, the officers who entered the home were from the Waxahachie P.D. Waxahachie is in Ellis County, and basically is to the South of Dallas County. **PLEASE SEE EXHIBIT F [attached hereto~copies of some photos and documents pertaining to damage to the home of the plaintiffs, and to repairs done, and costs of repairs, and payment.**

Information indicates that the defendants were in the home, and were searching parts of it, and were ordering the plaintiffs about and otherwise exercising domination over them in a hostile and threatening manner while armed with deadly weapons and making much noise and yelling, for at least fifteen or more minutes before anybody called an ambulance. Ambulance records **PLEASE SEE EXHIBIT G [attached hereto~a copy of Ambulance Records]** show that from the time a call was made for an ambulance, until the time it had arrived and collected up two of the plaintiffs, and departed from their home to take them to the Emergency Room at a hospital, the time elapsing was about a half hour. Even when Plaintiff Ms. Jimerson was on a gurney and was taken from her home to the ambulance defendants were still inside if it, and others were outside boarding up the broken windows.

At the plaintiffs' home, before she was taken away to the hospital, at least one defendant [Lt. Lewis] told Ms. Jimerson that the defendants should not have come into her

Report Letter/Jimerson-Parks case
8  March 2021
page - 9 of 22
----------------------------

home and admitted that doing so was wrong.

When the defendants entered the home of plaintiffs, the defendants were a fearsome group, and were armed with scary looking weapons that could inflict great harm or cause death.  The defendants were like a loud group of hostile folks, and ordered the plaintiffs about, and hurt the plaintiffs.  It is my understanding that the two little boys got broken glass in their eyes.  Ms. Jimerson was just getting out of her bath, and had no clothes on from the waist down; but she was ordered and forced to lay on the floor in or near the doorway from the bathroom to the hall, with no clothing on from the waist down for a long time [probably at least 15 or more minutes].  Because of the way she was mistreated by the defendants Ms. Jimerson sustained bodily injury and had to be taken from her house by gurney to an ambulance, and then taken by ambulance to a hospital emergency Room. This is reported in the ambulance record.  **PLEASE SEE EXHIBIT G [attached hereto~copies of the ambulance records, which show injury to Ms. Jimerson as "Pain - Multiple Injuries ... Assault - Assault with bodily force ..."] .**  Based upon information now available, it appears that the ambulance was not called until at least 15 or more minutes after the defendants first entered into the plaintiffs' home.

Ms. Jimerson recalls that while she was being forced to lay on the floor half naked the time that passed was at least 15 minutes.  She also reports that during this time her young daughter, plaintiff Jasamea Jimerson, was in her own room where Ms. Jimerson learned that Jasamea had been forced to the floor and her hands had been bound, apparently with "flex cuffs" (zip ties), and her room was searched by defendants. As Ms. Jimerson recalls, only when defendants found nothing and stopped searching Jasamea's room, did they let Jasamea get up and come to where Ms. Jimerson was, and only then did the defendants permit Ms. Jimerson to get clothing and get completely dressed.  It was after this that the ambulance arrived.

**The ambulance records [EXHIBIT G] show ambulance was called for at 11:28 p.m., dispatched at 11:29 p.m. , on scene at 11:36 p.m., some vitals were taken at 11:49 p.m., and the ambulance departed at 11:50 p.m ... ].**

The **injuries to minor plaintiff Jasamea** Jimerson, as reported in the ambulance records **[EXHIBIT G]** included "**Pain - Knee Pain ... Struck by Object - Contact with blunt object ...**"   .

After the defendants broke into the Jimerson-Parks family home, they ordered the

Report Letter/Jimerson-Parks case
8 March 2021
page - 10 of 22
----------------------------

plaintiffs around and intimidated and frightened them, and the plaintiffs were basically their prisoners; and plaintiffs did not resist or do anything to antagonize the defendants. Plaintiffs were not armed. Plaintiffs were not behaving improperly or illegally. While in the home the defendants searched the room of minor plaintiff Jasamea. Defendants damaged and broke some of plaintiffs' personal property. Ms. Jimerson still recall that this was frightening and that she and members of her family could have been killed.

------------------------------------

**I am of the opinion** that under there are various limitations upon the conduct of police officers, and detectives, and investigators, and prosecutors, and district attorney offices, and police departments, and cities and municipalities, and units of government at the state and local level, and at the federal level, and upon various law enforcement offices and agencies which are imposed by virtue of the various provisions of the Constitution of the United States of America, and its amendments (including Fourth and Fifth and Fourteenth Amendments) in order to protect the rights and liberties of citizens, and that these various limitations include:

> regarding police work and all law enforcement, police officers and detectives, and all law enforcement officials and investigators, must obey the law, cannot violate the law, must respect the legal and constitutionally guaranteed rights of all citizens, and cannot violate the legal rights of any citizen. It is wrong to violate Fourth Amendment Constitutional rights regarding search and regarding seizure, it is wrong to abuse citizens, it is wrong to harass citizens, it is wrong to invade and/or search the home of citizens without any warrant and without any probable cause, and also wrong to detain or search any person without a warrant and without probable cause.

In this case it is my opinion, on the basis of reasonable legal probability, that the defendants violated the rights of the plaintiffs when, without warrant or probable cause, they invaded the home of the plaintiffs. This was unreasonable, and no reasonable law

enforcement office would have entered the plaintiffs home in the way that the defendants did. This caused real harm to the plaintiffs, as described hereinabove.

Further, in this case it is my opinion, on the basis of reasonable legal probability, that after making improper entry into the home of plaintiffs, the defendants violated the rights of the plaintiffs when, without warrant of probable cause, they harassed and intimidated and dominated, and in essence held under what amounted to arrest, the plaintiffs, and searched parts of their home which included the bedroom of minor plaintiff Jasamea Jimerson, and damaged and broke some of the plaintiffs' personal property, and handled at least some of the plaintiffs roughly causing two of them to need to be transported by ambulance to a nearby hospital emergency Room, and force Ms. Karen Jimerson to lay on the floor without any clothing on from the waist down for an extended period of time, and all the while the defendants exercised domination over the plaintiffs entire home roaming around uninvited as they pleased and armed with dangerous and lethal weapons. This was unreasonable, and no reasonable law enforcement officer would have entered the plaintiffs home in the way that the defendants did. This caused real harm to the plaintiffs, as described hereinabove.

Separately, in this case, and on the basis of reasonable legal probability, it is my opinion that the defendants violated Texas criminal law by committing against the plaintiffs the crimes of official oppression, and of criminal trespass, and of assault, and of aggravated assault; and that this misconduct constitutes under Texas state law negligence per se, and was a proximate cause of harms and damages to plaintiffs in ways as described hereinabove.

Also, in this case, I am of the opinion, on the basis of reasonable legal probability, that:

a)    on the occasion in question Plaintiffs, each and all, had a legally recognized and well-known right to be free from unreasonable search and seizure which was guaranteed by the Fourth Amendment.

b)    on the occasion in question, when the Defendants entered into the premises of the home of Plaintiffs without a warrant [and without consent, and without warning] the Defendants violated the Plaintiffs' legally recognized and well-known right to be free

Report Letter/Jimerson-Parks case
8 March 2021
page - 12 of 22
----------------------------

from unreasonable search and seizure which was guaranteed by
the Fourth Amendment.

c)      on the occasion in question, when the Defendants, after having
entered into the premises of the home of Plaintiffs without a
warrant [and without consent, and without warning], then in
effect took custody of the Plaintiffs [and of each of them] at gun
point and thereby deprived the Plaintiffs [and each of them] of
their liberty, with no warrant and with no probable cause,  the
Defendants violated the Plaintiffs' legally recognized and well-
known right to be free from unreasonable search and seizure
which was guaranteed by the Fourth Amendment.

d)      at the time, and on the occasion in question, when the
Defendants attacked and  assaulted the home of the Plaintiffs
[with no warrant] and entered into the home attired as a heavily
armed "S.W.A.T. team", and took control of the premises of the
home, and of the Plaintiffs, the Defendants had no "probable
cause" upon which to believe [or even suspect] that any of the
Plaintiffs had committed any crime [and in fact the Defendants
were erroneously invading the home of the Plaintiffs by a total
mistake, having come to the wrong address to try to execute [as
a "S.W.A.T. team] a search warrant that had  nothing to do with
any Plaintiff, or with any activity related to any Plaintiff.

I may continue to work on this case by reviewing further information when, if, and
as it may become available [if the defense ever provides discovery responses and
information, and stops resisting discovery....]; and in so doing I may, if appropriate,
formulate more opinions.

Report Letter/Jimerson-Parks case
8  March 2021
page - 13 of 22
----------------------------

Best regards,

Robert K. "Bob" Gill

Attachments/Exhibits:        As indicated above ~

**EXHIBIT A** : Aerial Map of Jimerson Home  v. Warrant Location [they are not "next door"]

**EXHIBIT B** : 11 pages from 11 separate defense pleadings filed in this case [by attorney Montgomery] showing admissions of Lt. Lewis and the ten other Waxahachie P.D. members who are defendants [Behringer, Dunn, Fuller, Glidewell, Gonzales. Koch, James Lewis, Sanders, Taylor, and Young] that they improperly entered plaintiffs' home without a warrant

**EXHIBIT C** : Probable Cause Affidavit [filed in a Texas State Court, not in a federal court; does not mention or refer to any plaintiff  and does not mention or refer to plaintiffs' home]

**EXHIBIT D** : the two (2) Search Warrants  [issued out of a Texas State Court, by a Texas State Judge, in Dallas; they do not mention or refer to any plaintiff or mention or refer to any person, and do not mention or refer to plaintiffs' home or its address in any manner; but they do mention two (2) other locations specifically and by their specific addresses]

Report Letter/Jimerson-Parks case
8 March 2021
page - 14 of 22
----------------------------

**EXHIBIT E** : Filed returns on two (2) Search Warrants  [filed in a Texas State Court, in Dallas, not in a federal court; they do not mention or refer to any plaintiff or mention or refer to any person, and do not mention or refer to plaintiffs' home or its address in any manner; but they do mention two (2) other locations specifically and by their specific addresses]

**EXHIBIT F** : Home Repair Records/Invoices/some photos [all pertaining to plaintiffs' home]

**EXHIBIT G** : Ambulance Records

**EXHIBIT H** :  (VITA OF ROBERT K. "BOB" GILL ~ (totaling 3 pages)

Report Letter/Jimerson-Parks case
8  March 2021
page - 15 of 22
----------------------------

# EXHIBIT "A"

**EXHIBIT A** : Aerial Map of Jimerson Home  v. Warrant Location [they are not "next door"]



Report Letter/Jimerson-Parks case
8 March 2021
page - 16 of 22
----------------------------

# EXHIBIT "B"

**EXHIBIT B** : 11 pages from 11 separate defense pleadings filed in this
case [by attorney Montgomery] showing admissions of Lt. Lewis and the
ten other Waxahachie P.D. members who are defendants [Behringer, Dunn,
Fuller, Glidewell, Gonzales. Koch, James Lewis, Sanders, Taylor, and
Young] that they improperly entered plaintiffs' home without a warrant

gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Lt. Lewis was a member of the Waxahachie Police Department as well as the Waxahachie Police Department's SWAT Team.[4] Lt. Lewis, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Lt. Lewis:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]

- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]

- Used a battering ram to break open the front door;[8] and

- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Lt. Lewis, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, … a fully trained, experienced, law enforcement officer who knew, or should have known the well[-]established and well known law pertaining to the legal rights of citizens…..and Defendant Lt. Lewis was acting 'under color of law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 5, ¶ 4-A.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 22, ¶ 17.

gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Behringer was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Behringer, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Behringer:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Behringer, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, … [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens…..and Defendant [Behringer] was acting 'under color of law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 9, ¶ 4-K.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

**DEFENDANT DEREK BEHRINGER'S MOTION TO DISMISS PLAINTIFFS' STATE TORT CLAIMS – Page 2**

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Dunn was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Dunn, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Dunn:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Dunn, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, … [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens…..and Defendant [Dunn] was acting 'under color of law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 6, ¶ 4-B.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

DEFENDANT BRENT DUNN'S MOTION TO DISMISS PLAINTIFFS' STATE TORT CLAIMS – Page 2

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross

negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Fuller was a member of the Waxahachie Police Department as

well as a member of the Waxahachie Police Department's SWAT Team.[4]  Fuller, and the other

Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered

Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the

Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions

that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that

Defendants, including Fuller:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]

- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]

- Used a battering ram to break open the front door;[8] and

- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Fuller, as well as the other Defendants, was "[a]t all times

relevant to the acts described in this Complaint, … [a] fully trained, experienced, law

enforcement officer[] who knew, or should have known, the well[-]established and well known

law pertaining to the legal rights of citizens…..and Defendant [Fuller] was acting 'under color of

law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 7, ¶ 4-F.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Glidewell was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Glidewell, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Glidewell:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Glidewell, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, ... [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens.....and Defendant [Glidewell] was acting 'under color of law'..."[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 8, ¶ 4-I.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Gonzales was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Gonzales, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Gonzales:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Gonzales, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, … [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens…..and Defendant [Gonzales] was acting 'under color of law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 6, ¶ 4-D.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

**DEFENDANT ANDREW GONAZLES' MOTION TO DISMISS PLAINTIFFS' STATE TORT CLAIMS – Page 2**

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Koch was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Koch, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Koch:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]

- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]

- Used a battering ram to break open the front door;[8] and

- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Koch, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, ... [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens…..and Defendant [Koch] was acting 'under color of law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 6, ¶ 4-C.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross

negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Lewis was a member of the Waxahachie Police Department

as well as a member of the Waxahachie Police Department's SWAT Team.[4]  Lewis, and the

other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered

Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the

Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions

that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that

Defendants, including Lewis:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Lewis, as well as the other Defendants, was "[a]t all times

relevant to the acts described in this Complaint, … [a] fully trained, experienced, law

enforcement officer[] who knew, or should have known, the well[-]established and well known

law pertaining to the legal rights of citizens…..and Defendant [Lewis] was acting 'under color of

law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 8, ¶ 4-H.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Sanders was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Sanders, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Sanders:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Sanders, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, ... [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens.....and Defendant [Sanders] was acting 'under color of law'..."[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at pp. 7-8, ¶ 4-G.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

DEFENDANT STEPHEN SANDERS' MOTION TO DISMISS PLAINTIFFS'
STATE TORT CLAIMS – Page 2

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Taylor was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Taylor, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Taylor:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Taylor, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, ... [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens.....and Defendant [Taylor] was acting 'under color of law'..."[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 9, ¶ 4-J.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

**DEFENDANT JAMES TAYLOR'S MOTION TO DISMISS PLAINTIFFS'**
**STATE TORT CLAIMS – Page 2**

other Defendants as well as asserted pendent state tort claims for assault, negligence per se, gross negligence per se, criminal trespass, criminal assault, aggravated assault and official oppression.[3]

At the time of the incident, Young was a member of the Waxahachie Police Department as well as a member of the Waxahachie Police Department's SWAT Team.[4] Young, and the other Defendants, were serving a search warrant on the behalf of the DEA but mistakenly entered Plaintiffs' home instead of the home next door.[5] All of Plaintiffs' allegations against the Defendants (Plaintiffs do not differentiate between Defendants' actions) involve their actions that night in attempting to execute the DEA search warrant. Specifically, Plaintiffs allege that Defendants, including Young:

- Made an unannounced, violent, surprise and warrantless no-knock entry;[6]
- Attacked Plaintiffs' home as a heavily armed "paramilitary force" (a SWAT team);[7]
- Used a battering ram to break open the front door;[8] and
- Used flash bang devices to make great noise and emit smells and smoke.[9]

Further, Plaintiffs' allege that Young, as well as the other Defendants, was "[a]t all times relevant to the acts described in this Complaint, … [a] fully trained, experienced, law enforcement officer[] who knew, or should have known, the well[-]established and well known law pertaining to the legal rights of citizens…..and Defendant [Young] was acting 'under color of law'…"[10]

---

[3] *Id.* at pp. 39-40, ¶ 37.
[4] *Id.* at p. 7, ¶ 4-E.
[5] *Id.* at p. 11, fn. 5.
[6] *Id.* at p. 19, ¶ 12(c).
[7] *Id.*
[8] *Id.* at p. 20, ¶ 12(d).
[9] *Id.* at p. 28, ¶ 29.
[10] *Id.* at p. 23, ¶ 18.

**DEFENDANT DERRICK YOUNG'S MOTION TO DISMISS PLAINTIFFS'
STATE TORT CLAIMS – Page 2**

Report Letter/Jimerson-Parks case
8  March 2021
page - 17 of 22
----------------------------

# EXHIBIT "C"

**EXHIBIT C** : Probable Cause Affidavit [filed in a Texas State Court, not in a federal court; does not mention or refer to any plaintiff  and does not mention or refer to plaintiffs' home]

THE STATE OF TEXAS

COUNTY OF DALLAS

**AFFIDAVIT TO SUPPORT THE ISSUANCE OF SEARCH WARRANTS AT 573 8TH STREET, LANCASTER, TEXAS AND 1211 GLENCOE DRIVE, GLENN HEIGHTS, TEXAS**

## AFFIDAVIT IN SUPPORT OF THE ISSUANCE OF A SEARCH WARRANT

I, Christopher A. Hight, the undersigned Affiant, am a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:

1.      I am currently employed by the City of Dallas Police Department (DPD) as a police officer. I have been so employed for approximately 29 years and have been assigned to the Narcotics Division of said department for approximately the last 22 years. I am currently certified as a Master Peace Officer by the Texas Commission on Law Enforcement. Since April 2005, I have been assigned to the Drug Enforcement Administration (DEA), Department of Justice, as a deputized Task Force Officer. I am currently assigned to DEA's Strike Force 1. During my employment as a police officer, I have used a variety of methods during drug related investigations, including, but not limited to, visual surveillance, general questioning of witnesses, the use of: search warrants, confidential informants, undercover agents, pen registers/trap and trace devices, electronic mobile tracking/monitoring devices, and Title III wire interceptions. Based on my training and experience relating to the investigation of drug traffickers, and based upon interviews I have conducted with defendants, informants, witnesses, and participants in drug trafficking activity, I am familiar with the ways that drug traffickers conduct their business. My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions.

2.      Furthermore, based on my training, experience, and my participation in this investigation and other investigations involving drug trafficking organizations, I know:

a.      drug traffickers often place assets, including accounts at financial institutions, in

names other than their own to avoid detection of those assets by government or other law enforcement agencies;

b.   even though these assets are in other persons names, the drug dealers continue to use the assets and exercise dominion and control over them;

c.   large-scale narcotics traffickers must keep access to large amounts of cash in order to maintain and finance their narcotics business;

d.   illicit drug traffickers maintain books, records, receipts, notes, ledgers, computers with hard drive and media storage devices, money orders, photographs, and other papers relating to the transportation, ordering, sale and distribution of controlled substances; that illicit drug traffickers commonly "front" (provide on consignment) controlled substances to their customers; and that the aforementioned books, records, computers with hard drive and media storage devices, receipts, notes, ledgers etc. are maintained where the illicit drug traffickers have ready access to them;

e.   persons who traffic in controlled substances, like any other person, in that they maintain documents and records. These documents and records will normally be retained for long periods regardless of whether their value to the individual has diminished. Often times, this type of evidence is generated, maintained, and subsequently forgotten. Hence, documents that one would normally think a prudent person would destroy because of the incriminating nature of the documents are kept. In fact, affiant has participated in the execution of search warrants where documentary evidence dating back years was found. It is also affiant's experience that the larger, more complex a continuing criminal enterprise is, the more documentary evidence is generated during the course of commission;

f.   it is common for large-scale dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, businesses, safe deposit boxes, and obscure locations known only to them (e.g. mail drops, mini storage warehouses) for easy access and to conceal them from law enforcement authorities;

g.   persons involved in large-scale drug trafficking conceal in their residences, businesses, safe deposits boxes, and vehicles, caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, personal effects, coin collections, and other items of value representing the proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in illegal narcotic trafficking activities;

JIMERSON-00002

h.  although drug dealers often store their valuables in their residence, including proceeds from their drug sales, they often store their drugs and other evidence of their criminality in places other than their residences to protect themselves if law enforcement were to search their residence;

i.  drug dealers often purchase expensive vehicles and residences with the proceeds from their drug transactions;

j.  when drug dealers amass proceeds from the sale of drugs, they often attempt to legitimize these profits. In order to accomplish this goal, drug traffickers utilize foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, brokerage houses, trusts, partnerships, shell corporations and business fronts;

k.  drug traffickers commonly maintain addresses or telephone numbers in books, papers or media storage devices, which reflect the names, addresses and/or telephone numbers for their associates in the drug trafficking organization;

l.  drug traffickers take, or cause to be taken, photographs of themselves, their associates, their properties, and their products;

m.  drug traffickers utilize cellular telephones to communicate with their drug sources, customers, and other co-conspirators in furtherance of their criminal activity.

n.  in addition to controlled substances, drug traffickers usually keep paraphernalia for manufacturing cutting, packaging, weighing and distributing their drugs, and for the collection, packaging, counting, and shipment of drug proceeds. This paraphernalia includes but is not limited to, scales, plastic bags, rubber gloves, heat sealers, rubber bands and vacuum sealers;

o.  the courts have recognized unexplained wealth is probative evidence of crimes motivated by greed, in particular, illegal trafficking in controlled substances.

3.   This affidavit is submitted in support of the issuance of search warrants, pursuant to Texas Code of Criminal Procedure Article 18.02, authorizing the search of:

a.   573 8th Street, Lancaster, Dallas County, Texas (hereinafter, "the 8th Street residence"), a single-family residence, which is located on the north side of the 500 block of 8th Street and is the thirteenth residence west from Elm Street. The residence is a white-frame, single

JIMERSON-00003

story residence, with a gray composition shingle roof, and the numbers "573" painted on the curb directly in front of the residence and affixed to a wooden post that supports the front porch. Also, the property contains two outbuildings located behind the residence. Said premise, in addition to the foregoing description, also includes all other buildings, structures, places and vehicles on said premises and within the curtilage, which are found to be under the control of the suspected parties named below and in, on, or around which said suspected parties may reasonably reposit or secrete property which is the object of the search requested herein. Said residence is in the charge of and controlled by Jonathan Fierro, a Hispanic male born on June 28, 1990 (hereinafter, "Fierro"); and

       b.     1211 Glencoe Drive, Glenn Heights, Dallas County, Texas (hereinafter, "Glencoe residence"), a single-family residence, which is located on the south side of the 1200 block of Glencoe Drive and is the sixth residence east from Gateway Boulevard. The residence is a brown-brick, two-story residence, with a gray composition shingle roof, the numbers "1211" are painted on the curb directly in front of the residence, and a decorative placard with the numbers "1211" affixed to the residence near the garage doors. Said premise, in addition to the foregoing description, also includes all other buildings, structures, places and vehicles on said premises and within the curtilage, which are found to be under the control of the suspected parties named below and in, on, or around which said suspected parties may reasonably reposit or secrete property which is the object of the search requested herein. Said residence is also in the charge of and controlled by Fierro.

       4.     I believe and hereby charge and accuse there is at said premise personal property concealed and kept in violation of the laws of Texas and described as follows: instruments of an organized criminal enterprise associated with the ongoing distribution of methamphetamine and the laundering of the attendant proceeds, as enumerated in Attachment A (attached to this affidavit and now being made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this affidavit). Furthermore, I contend the possession of the said described personal property is occurring at the 8th Street and Glencoe residences on an ongoing basis, including today's date of March 27, 2019.

<u>**Background of the Investigation**</u>

JIMERSON-00004

5.     In October, 2018, members of Strike Force 1 began an investigation into the drug trafficking and money laundering activities of Fierro.  As a result of several surveillances, agents identified Fierro's residence, the Glencoe residence, his drug stash location, the 8ᵗʰ Street residence, and his vehicle, a silver, 2011 Lincoln MKX.

6.     On October 23, 2018, in furtherance of the investigation, agents utilized a confidential source to make a controlled purchase of approximately one kilogram of methamphetamine from Fierro for $5,500 cash.  After the purchase, Fierro traveled to his residence, the Glencoe residence, with the cash he was paid for the drugs.

7.     On March 27, 2019, at about 2:50 p.m., members of Strike Force 1 established surveillance on the 8ᵗʰ Street residence.  At 5:30 p.m., agents observed Fierro arrive driving his Lincoln MKX, park in the driveway, and walk out of sight toward the residence.  About 15 minutes later, Fierro returned to his vehicle and departed.  Agents followed Fierro until he arrived at Home Depot, 500 North IH-35E, in Lancaster.  Upon arrival, agents observed Fierro park his Lincoln next to a black, 2008 Ford F-150, which was parked on the far west side of the Home Depot lot away from any other vehicles.  Fierro parked in such a way so his Lincoln's passenger side was beside the Ford's driver's side.  A soon as Fierro stopped, the driver of the Ford F-150, Vazquez, exited the Ford and immediately entered the front passenger seat of Fierro's Lincoln.  About one minute later, Vasquez exited Fierro's Lincoln, opened the Ford's driver's side rear passenger door an appeared to place an object on the truck's floorboard behind the driver's seat. Vasquez then entered the Ford's driver's seat and departed.  Fierro also departed.

8.     Agents followed both Vasquez and Fierro.  Agents suspected they observed a drug transaction between Fierro and Vasquez and requested Lancaster police officers conduct a pretextual traffic stop of Vasquez's Ford upon observing a traffic violation.  Lancaster police officers observed Vasquez failed to signal a turn and failed to make a proper turn on IH-35E north of Beltline Road, Lancaster, Texas.  Lancaster officers stopped Vasquez for the observed traffic violations.  Upon contacting Vasquez, he opened his driver's door and Lancaster officers observed, in plain view as they stood outside the truck, suspected cocaine in the driver door's pouch.  Lancaster officers placed Vasquez under arrest for the suspected cocaine.  A search

JIMERSON-00005

incident to arrest of Vasquez's truck revealed a white, plastic bag that contained a gallon-sized, Ziplock-type bag with approximately one kilogram of suspected methamphetamine. Vasquez was taken into custody and transported to the Lancaster Police Department for processing and interviewing.

9.     While Vasquez was stopped by Lancaster officers, agents continued following Fierro as he traveled south on IH-35E. Once agents learned Lancaster officers located the kilogram of methamphetamine in Vasquez's truck, they stopped Fierro and took him into custody. A search incident to arrest of Fierro's person revealed a large amount of cash. The cash was sealed on scene in an evidence envelope pending an official count. Fierro was transported to the Lancaster Police Department for processing and interviewing. Fierro invoked his right to counsel and agents did not attempt to interview him.

10.     Vasquez was advised of his rights pursuant to Miranda and he knowingly and voluntarily waived those rights and provided a verbal statement. During his verbal statement, he admitted to purchasing the kilogram of methamphetamine officers seized from Fierro for $3,900. Vasquez also admitted to purchasing another kilogram of methamphetamine in the recent past from Fierro for the same price. On both occasions Fierro sold methamphetamine to Vasquez, he drove his Lincoln MKX.

11.     Based upon the totality of the above-related facts, I believe probable cause exists to believe items enumerated in Attachment A will be found in the 8th Street and Glencoe residences. I believe a search of those residences will reveal evidence showing Fierro engaged in the unlawful delivery and/or possession with intent to deliver controlled substances; to wit: methamphetamine, a felony under Chapter 481 of the Texas Health and Safety Code, and/or to store the evidence of and proceeds from such crimes.

12.     This affidavit is based on my own personal knowledge as well as information provided to me by other law enforcement officers who participated in this investigation with me and are known to me as credible. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts I believe are essential to establish probable cause.

JIMERSON-00006

## "NO KNOCK" AUTHORIZATION

13.    I request authorization to enter the 8th Street residence without first knocking and announcing the presence and purpose of officers executing the warrant sought herein. As reasonable suspicion to believe such knocking and announcing would be dangerous, futile, or would inhibit the effective investigation of the offense described in this affidavit, I submit the following facts and circumstances:

a.    During surveillance of the 8th Street residence, agents observed at least four males entering and exiting the residence and two outbuildings. Agents observed the males frequently entering the residence's front yard and watching vehicular traffic as it passed. I believe these males act as "lookouts" for law enforcement officers' presence. I believe officers attempting to execute the warrant will be observed prior to their entry, which will give the occupants time to destroy evidence or flee the scene.

**WHEREFORE**, I ask for issuance of a warrant that will authorize officers to search the 8th Street and Glencoe residences, as well as their outbuildings, for the personal property enumerated in Attachment A, attached hereto, and seize the same.

**FURTHERMORE**, I request authorization to dispense with the usual requirement to knock and announce our purpose before entering the suspected premise to execute this warrant

CHRISTOPHER A. HIGHT
DALLAS POLICE DEPARTMENT

Subscribed and sworn to before me by said Affiant on this the27th day of March 2019.

JUDGE HECTOR GARZA
195TH JUDICIAL DISTRICT COURT
DALLAS, DALLAS COUNTY, TEXAS

Report Letter/Jimerson-Parks case
8  March 2021
page - 18 of 22
----------------------------

# EXHIBIT "D"

**EXHIBIT D** : the two (2) Search Warrants  [issued out of a Texas State
Court, by a Texas State Judge, in Dallas; they do not mention or refer to any
plaintiff or mention or refer to any person, and do not mention or refer to
plaintiffs' home or its address in any manner; but they do mention two (2)
other locations specifically and by their specific addresses]

## SEARCH WARRANT

**THE STATE OF TEXAS**

**COUNTY OF DALLAS**

**WARRANT AUTHORIZING THE SEARCH OF 1211 GLENCOE DRIVE, GLENN HEIGHTS, TEXAS**

THE STATE OF TEXAS to the Sheriff or any Peace Officer of Dallas County, Texas, or any Peace Officer of the State of Texas,

GREETINGS:

WHEREAS, the affiant whose name appears on the affidavit attached hereto is a peace officer under the laws of Texas and did heretofore this day subscribe and swear to said affidavit before me (which said affidavit, including Attachment A, is here now made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this Warrant), and whereas I find that the verified facts stated by affiant in said affidavit show that affiant has probable cause for the belief he expresses herein and establishes existence of proper grounds for issuance of this Warrant;

NOW, THEREFORE, you are commanded to enter the suspected place, vehicles, and premises described in said affidavit, to wit: **1211 GLENCOE DRIVE, GLENN HEIGHTS, DALLAS COUNTY, TEXAS**. At said places you shall search for and, if same be found, seize and bring before me the property **enumerated in Attachment A**.

FURTHERMORE, I find that affiant has established reasonable suspicion to believe that to knock and announce their purpose by the officers executing this warrant would be futile, dangerous, and otherwise inhibit the effective investigation of the offense or offenses related to the purpose of this warrant. Therefore, unless circumstances to the contrary are discovered prior to entry, you are hereby authorized to dispense with the usual requirement that you knock and announce your purpose before entering the suspected premise to execute this warrant

It is further ordered that all U.S. currency and assets seized that may be forfeitable under Texas law or Title 21 of the United States Code be released to the appropriate agency, whether the agency be state or federal, by either depositing the currency into an appropriate bank account or converting it into a cashier's check or other acceptable negotiable instrument to be deposited into an appropriate account for forfeiture proceedings.

Herein fail not, but have you then and there this Warrant within three days, exclusive of the day of its execution, with your return thereon, showing how you have executed same.

ISSUED AT___9:41___ o'clock ___P___ M., on this the 27th day of March, 2019, to certify which witness my hand this day.

JUDGE HECTOR GARZA
195TH JUDICIAL DISTRICT COURT
DALLAS, DALLAS COUNTY, TEXAS

JIMERSON-00008

## SEARCH WARRANT

| THE STATE OF TEXAS | WARRANT AUTHORIZING THE SEARCH OF 573 8TH STREET, LANCASTER, TEXAS |
|---|---|
| COUNTY OF DALLAS | |

THE STATE OF TEXAS to the Sheriff or any Peace Officer of Dallas County, Texas, or any Peace Officer of the State of Texas,

GREETINGS:

WHEREAS, the affiant whose name appears on the affidavit attached hereto is a peace officer under the laws of Texas and did heretofore this day subscribe and swear to said affidavit before me (which said affidavit, including Attachment A, is here now made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this Warrant), and whereas I find that the verified facts stated by affiant in said affidavit show that affiant has probable cause for the belief he expresses herein and establishes existence of proper grounds for issuance of this Warrant;

NOW, THEREFORE, you are commanded to enter the suspected place, vehicles, and premises described in said affidavit, to wit: **573 8TH STREET, LANCASTER, DALLAS COUNTY, TEXAS**. At said places you shall search for and, if same be found, seize and bring before me the property **enumerated in Attachment A.**

FURTHERMORE, I find that affiant has established reasonable suspicion to believe that to knock and announce their purpose by the officers executing this warrant would be futile, dangerous, and otherwise inhibit the effective investigation of the offense or offenses related to the purpose of this warrant. Therefore, unless circumstances to the contrary are discovered prior to entry, you are hereby authorized to dispense with the usual requirement that you knock and announce your purpose before entering the suspected premise to execute this warrant

It is further ordered that all U.S. currency and assets seized that may be forfeitable under Texas law or Title 21 of the United States Code be released to the appropriate agency, whether the agency be state or federal, by either depositing the currency into an appropriate bank account or converting it into a cashier's check or other acceptable negotiable instrument to be deposited into an appropriate account for forfeiture proceedings.

Herein fail not, but have you then and there this Warrant within three days, exclusive of the day of its execution, with your return thereon, showing how you have executed same.

ISSUED AT 9:40 o'clock ⎵ M., on this the 27th day of March, 2019, to certify which witness my hand this day.

JUDGE HECTOR GARZA
195TH JUDICIAL DISTRICT COURT
DALLAS, DALLAS COUNTY, TEXAS

JIMERSON-00009

## ATTACHMENT A

1. Books, records, receipts, notes, correspondence, ledgers, bank records, money orders, credit card records, deposit items, bank drafts, wire transfer records, receipts for cashier's checks, airline tickets and other items relating to domestic or international travel, records relating to pre-paid debit or stored value cards, passbooks, certificates of deposit, time saving certificates, financial statements, loan records, real estate purchase and/or rental records (including contracts, deeds, promissory notes, applications, and rental agreements), records reflecting the purchase, ownership, sale, or lease of automobiles (including titles, registration, purchase or lease agreements, and payment records) automobile insurance policy records, records reflecting the purchase of items such as jewelry, furs, furniture and electronics, or other expenditures of money, mail and contract mail carrier records, and/or other papers relating to the transportation, ordering, sale and distribution of illegal controlled substances or relating to the receipts and/or disposition of the proceeds from the distribution of illegal controlled substances or the illegal laundering of funds derived from sale of controlled substances;

2. Currency, financial instruments, including stocks, bonds, and other securities, precious metals, jewelry, and/or other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, laundering, secreting or spending large sums of money made from engaging in illegal controlled substance activities, keys to automobiles, false identifications used to acquire assets or make expenditures in alias or nominee names, keys to safe deposit boxes;

3. Telephone and address books, electronic pagers and pager records, mobile and cellular telephones including records of telephone calls whether recorded in writing or electronically, and lists of telephone and pager numbers or papers which reflect names, addresses and/or telephone numbers of individuals associated in dealing in illegal controlled substances;

4. Photographs and videotapes of individuals and property, with controlled substances or money and/or associates in the drug trafficking business;

5. Illegal controlled substances, scales, and other materials used in the packaging, cutting, weighing, cooking and/or manufacturing and distributing of illegal controlled substances;

6. Electronic paging devices (pagers) and cellular telephones, contracts, purchase and/or rental agreements, and billing records relative to the acquisition and use of pagers and/or cellular telephones;

7. Documents reflecting the shipment or mailing of parcels through the U.S Postal Service or commercial carriers such as United Parcel Service (UPS) or FedEx;

8. Firearms and ammunition for firearms;

JIMERSON-00010

9.   Electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer-related electronic devices;

10.   Instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission; and

11.   Written or printed material which provides instructions or examples concerning the operation of a computer system, computer software, and/or any related device.

JIMERSON-00011

Report Letter/Jimerson-Parks case
8  March 2021
page - 19 of 22
----------------------------

# EXHIBIT "E"

**EXHIBIT E** : Filed returns on two (2) Search Warrants  [filed in a Texas
State Court, in Dallas, not in a federal court; they do not mention or refer to
any plaintiff or mention or refer to any person, and do not mention or refer
to plaintiffs' home or its address in any manner; but they do mention two
(2) other locations specifically and by their specific addresses]

## RETURN AND INVENTORY

| | |
|---|---|
| **THE STATE OF TEXAS** | **573 8TH STREET,** |
| **COUNTY OF DALLAS** | **LANCASTER, TEXAS** |

 

The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath certifies that the foregoing Warrant came to hand on the day it was issued and that it was executed on the 27th day of March, 2019, by making the search directed therein and seizing during such search the following described personal property:

Approximately 1,210.5 grams heroin;
Approximately 2,027.0 grams crystal methamphetamine;
Approximately 1,206.6 grams liquid methamphetamine;
Approximately 625.0 grams marijuana;
1 – Glock model 20, 10mm semi-automatic handgun, serial #BBLU401;
1 – LG cellular telephone;
Drug packaging materials;
1 – one gallon acetone can;
1 – Master lock; and
Approximately 656.7 grams of an unknown type drug.

 

_____
CHRISTOPHER A. HIGHT
DALLAS POLICE DEPARTMENT

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this the 1st day of April, 2019.

JEAN LYNN REED
My Notary ID # 4449546
Expires September 24, 2022

_____
NOTARY PUBLIC, IN AND FOR
DALLAS COUNTY, TEXAS

## RETURN AND INVENTORY

| | |
|---|---|
| **THE STATE OF TEXAS** | **1211 GLENCOE DRIVE,** |
| **COUNTY OF DALLAS** | **GLENN HEIGHTS, TEXAS** |

The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath certifies that the foregoing Warrant came to hand on the day it was issued and that it was executed on the 27th day of March, 2019, by making the search directed therein and seizing during such search the following described personal property:

No arrests or seizures were made.

_____
CHRISTOPHER A. HIGHT
DALLAS POLICE DEPARTMENT

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this the 1st day of April, 2019.

_____
NOTARY PUBLIC, IN AND FOR
DALLAS COUNTY, TEXAS

JEAN LYNN REED
My Notary ID # 4449546
Expires September 24, 2022

Report Letter/Jimerson-Parks case
8  March 2021
page - 20 of 22
----------------------------

# EXHIBIT "F"

**EXHIBIT F** : Home Repair Records/Invoices/some photos [all pertaining to  plaintiffs' home]

# Invoice



Hawkeye Home Improvement, Inc.
121 Lynnie Pennie
Midlothian, TX 76065
972-754-0515
johnniekay@sbcglobal.net
HawkeyeHomeImprovement.com

| Bill To |
| --- |
| Waxahachie Police Department |

| Date | Invoice No. | Project | P.O. Number |
| --- | --- | --- | --- |
| 04/15/19 | 2161 | | |

| Description | Quantity | Rate | Amount |
| --- | --- | --- | --- |
| Entry door, hardware, trim | | 404.39 | 404.39 |
| Labor On Entry Door | | 275.00 | 275.00 |
| Labor & Materials on 6 Replacement windows | | 2,550.00 | 2,550.00 |
| Sales Tax | | 8.25% | 0.00 |

| | |
| --- | --- |
| Subtotal | $3,229.39 |
| Total | $3,229.39 |
| Balance Due | $0.00 |

JIMERSON-00014

Sondra ProAnn

Keta Norris   469 309 4414
rnorris@waxahachie.org

## Crossroads
### CRIME & TRAUMA SCENE CLEANING
P.O. Box 381975 • Duncanville, TX 75138
Ph # 972-709-1188 • 214-577-4551
www.crossroadstrauma.com
*"Compassion in Crisis"*

### Job Address Information

Date May 2, 2019

Name Jimerson

Address 593 8th st

City, State, Zip Lancaster 75146

Ph # 903-917-7636 Early
214-497-5804 Karen

In Reference to: _____  VC#
In Reference to: _____  VC#
Make - ____ Model - ____ Year - ____  VIN#

Type Structure: (Home Owner?) Mobile Home  Vehicle  Business

### Authorization

(Please Print) _____ authorize Crossroads Crime
and Trauma Scene Cleaning to enter job address for the
purpose of removing and/or cleaning any contaminated items
and decontamination of crime or trauma scene.

Signature _____

### Details

Approx 560 st of carpet/pad to be replaced by
'Ideal Floors' 912-421-1019 *

Replace/Install new blinds rods and curtains
for 6 windows by Crossroads

* Carpet install to be scheduled for week of
5/13 - 5/17

### Representative Information

Name Waxahachie Police Dept

Address Lt. Lewis

City, State, Zip mlewis@waxahachie
pd.org

Ph # _____

Relationship 972-922-8723

|  | DC | HM | SI | AC | MD | GF | 0.L |
|--|----|----|----|----|----|----|----|
|  | DC | HM | SI | AC | MD | GF | 0. |
|  |    |    |    |    | Plate - |  |  |

### Insurance: (If Applicable)

Ins. Co. Name _____

Policy # _____  Ph # _____

Claim # _____  Deductible Amount _____

Adjuster Name _____

Agent Name _____  Ph # _____

### Payment Type

|  |  | Amount |
|--|--|--------|
| Cash | 2148 | Total $1500.00 |
| Check # MC 3 X | (- Deductible) _____ |
| WM ATM | Sub Total _____ |
| Terms # ATM | Tax _____ |
| Due Date _____ | **Total Amt.** $1500.00 |
| Late Fee (recurring after due date) | PO # If Applicable _____ | Invoice # 190502 |

White Copy: Office     Yellow Copy: Representative

JIMERSON-00015

Page   1

DV036351

**INVOICE**

| Sold To | Ship To |
|---|---|
| CROSSROADS CRIME AND TRAUMA | JIMERSON, KAREN |
| P.O. BOX 381975 | 593 8TH ST |
| DUNCANVILLE, TX 75138 | LANCASTER, TX 75146 |

| Order Date | Tele #1 | PO Number | Order Number |
|---|---|---|---|
| 05/03/19 | 972-709-1188 | | DV036351 |

| Inventory | Style/Item | Color/Description | Quantity Units | Price | Extension |
|---|---|---|---|---|---|
| QH2XXAM | DAZZLING (S) 15 | 22TRUMPET 1ST | 65.33 SY | 13.07 | 854.04 |
| 3/8R6 | 3/8 6LB PAD | 30 YDS/ROLL | 64.28 SY | 0.00 | 0.00 |
| | Amt or Inv: 30 YDS./ROLL | | | | |
| C 30-999 250 | CARPET INSTALL PI | | 65.33 SY | 5.56 | 363.00 |
| | FURNITURE MOVING BY THE YARD | | 65.33 SY | 0.00 | 0.00 |
| | 1 YEAR INSTALLATION WARRANTY | | 1.00 SY | 0.00 | 0.00 |
| | COMPUTER GENERATED CARPET | | 65.33 SY | 0.00 | 0.00 |
| DISCOUNT | DISCOUNT TO CUSTOMER | DISCOUNT | -1.00 EA | 67.04 | -67.04 |
| | Amt or Inv: DISCOUNT LINE | | | | |
| REMOVE, | CARPET REMOVAL/UNSANITARY | | 1.00 SY | 0.00 | 0.00 |
| CARPET | | | | | |
| CSA | CSA | CSA | 7.41 EA | 0.00 | 0.00 |

— 05/28/19 —      — 11:08AM —

Sales Representative(s):

OLEN PHILLIPS

Thank you for choosing our company.
100% Satisfaction Guaranteed*

| | |
|---|---|
| Subtotal: | 1,150.00 |
| Sales Tax: | 0.00 |
| Misc. Tax: | 0.00 |
| **INVOICE TOTAL:** | **$1,150.00** |
| Discount: | 0.00 |
| Less Payment(s): | 1,150.00 |
| **BALANCE DUE:** | **$0.00** |

JIMERSON-00016



JIMERSON-00017



JIMERSON-00018



JIMERSON-00019



JIMERSON-00020



JIMERSON-00021



JIMERSON-00022



JIMERSON-00023

Report Letter/Jimerson-Parks case
8  March 2021
page - 21 of 22
-----------------------------

# EXHIBIT "G"

**EXHIBIT G** : Ambulance Records

## Lancaster Fire Department
Patient Care Record

**Incident #:** 19-1650    **Date:** 03/27/2019    Patient 1 of 2

**Name:** JIMERSON, KAREN

### Patient Information

| Field | Value | Field | Value |
|---|---|---|---|
| Last | JIMERSON | Address | 593 EIGHTH ST |
| First | KAREN | Address 2 | |
| Middle | | City | Lancaster |
| Gender | Female | State | TX |
| DOB | | Zip | 75146 |
| Age | 37 Yrs, 6 Months, 0 Days | Country | US |
| Weight | | Tel | 2144975804 |
| Pedi Color | | Physician | |
| SSN | | Ethnicity | Not Hispanic or Latino |
| Race | Black or African American | | |
| Advance Directives | None | | |
| Resident Status | Resident | | |

### Clinical Impression

| Field | Value |
|---|---|
| Primary Impression | Injury |
| Secondary Impression | |
| Protocol Used | Pain Control |
| Anatomic Position | |
| Onset Time | |
| Chief Complaint | "my whole body is hurting" |
| Duration | Units |
| Secondary Complaint | |
| Duration | Units |
| Patient's Level of Distress | |
| Signs & Symptoms | Pain - Multiple injuries |
| Injury | Assault - Assault with bodily force - Home - 03/28/2019 |
| Mechanism of Injury | |
| Medical/Trauma | Trauma |
| Barriers of Care | None Noted |
| Alcohol/Drugs | None Reported |
| Pregnancy | No |
| Initial Patient Acuity | |
| Final Patient Acuity | |
| Patient Activity | |

### Medication/Allergies/History

| Field | Value |
|---|---|
| Medications | None Reported |
| Allergies | No known allergies |
| History | Other - partially paralyzed on right side |
| Last Oral Intake | |

### Vital Signs

| Time | AVPU | Side | POS | BP | Pulse | RR | SPO2 | ETCO2 | CO | BG | Temp | Pain | GCS(E+V+M)/Qualifiers | RTS | PTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23:49 | Alert | L | Sit | 134/94 A | 80 R | 18 R | 98 Rm | | | | | 9 | 15=4+5+6 | 12 | |

### Initial Assessment

| Category | Comments | Abnormalities | |
|---|---|---|---|
| Mental Status | | Mental Status | No Abnormalities |
| Skin | | Skin | No Abnormalities |
| HEENT | | Head/Face | + Pain |
| | | Eyes | No Abnormalities |
| | | Neck/Airway | No Abnormalities |
| Chest | | Chest | + Pain |
| | | Heart Sounds | No Abnormalities |
| | | Lung Sounds | No Abnormalities |
| | | General | No Abnormalities |
| Abdomen | | Left Upper | + Pain |
| | | Right Upper | + Pain |
| | | Left Lower | + Pain |
| | | Right Lower | + Pain |
| Back | | Cervical | No Abnormalities |
| | | Thoracic | No Abnormalities |
| | | Lumbar/Sacral | No Abnormalities |
| Pelvis/GU/GI | | Pelvis/GU/GI | + Pain (2) |
| Extremities | | Left Arm | + Pain (2) |
| | | Right Arm | + Pain (2) |
| | | Left Leg | + Pain (3) |
| | | Right Leg | + Pain (3) |
| | | Pulse | Not Assessed |
| | | Capillary Refill | Not Assessed |
| Neurological | | Neurological | No Abnormalities |

**Assessment Time:**

03/28/2019 00:38:32
Template Version: PCR-WEB-1.3.1
Data Version: 00174-00000000021176c49

## Lancaster Fire Department
Patient Care Record

Name: JIMERSON, KAREN          Incident #: 19-1650          Date: 03/27/2019          Patient 1 of 2

### Narrative

aosrf pt sitting on a chair. pt stated that the police raided her house and forced her to the ground while she was in the bathroom. the pt stated that she was on the floor for "what felt like 20 minutes". the pt stated that she was "hurting all over but more on my left side". pt was moved into the ambulance and v/s were taken. pt was monitored en-route with no changes. pt report was given to the ER staff and care was transferred.

### Specialty Patient - CDC 2011 Trauma Criteria

| | | | |
|---|---|---|---|
| Vital Signs | None | Trauma Activation | No |
| Anatomy of Injury | None | Time | |
| Mechanism of Injury | None | Date | |
| Special Considerations | None | Trauma Level | |
| | | Reason Not Activated | |

### Incident Details / Destination Details / Incident Times

| Incident Details | | Destination Details | | Incident Times | |
|---|---|---|---|---|---|
| Location Type | Home/Residence | Disposition | Transported No Lights/Siren | PSAP Call | 23:28:28 |
| Location | | Transport Due To | Patient's Choice | Dispatch Notified | |
| Address | 593 EIGHTH ST | Transported To | Methodist Charleston Medical Center | Call Received | 23:28:28 |
| Address 2 | | Requested By | Law Enforcement | Dispatched | 23:29:39 |
| Mile Marker | | Destination | Hospital | En Route | 23:30:24 |
| City | LANCASTER | Department | Emergency Room | Staged | |
| County | Dallas | Address | 3500 W. Wheatland Road | Resp on Scene | |
| State | TX | Address 2 | | On Scene | 23:36:25 |
| Zip | 75146 | City | Dallas | At Patient | 23:37:00 |
| Country | US | County | Dallas | Care Transferred | |
| Medic Unit | M353 | State | TX | Depart Scene | 23:50:58 |
| Medic Vehicle | M353 | Zip | 75237 | At Destination | 00:08:21 |
| Run Type | 911 Response | Country | US | Pt Transferred | 00:20:00 |
| Response Mode | Emergent | Zone | | Call Closed | 00:40:00 |
| Shift | A shift | Condition at Destination | Unchanged | In District | |
| Zone | City | Destination Record # | | At Landing Area | |
| Level of Service | Basic Life Support | Trauma Registry ID | | | |
| EMD Complaint | Assault | STEMI Registry ID | | | |
| EMD Card Number | | Stroke Registry ID | | | |
| Dispatch Priority | | | | | |

### Crew Members

| Personnel | Role | Certification Level |
|---|---|---|
| BURTON, DANNY | Lead | NREMT-Paramedic (NREMT-P) - P8054608; EMT-Paramedic - 706559 |
| INGRAM, TYLER | Driver | EMT-Paramedic - 731306 |
| EMT Rider, Student | Other | |

### Insurance Details

| | | | | | |
|---|---|---|---|---|---|
| Insured's Name | KAREN JIMERSON | Primary Payer | Medicaid | Dispatch Nature | |
| Relationship | Self | Medicare | | Response Urgency | |
| Insured SSN | | Medicaid | | Job Related Injury | |
| Insured DOB | | Primary Insurance | | Employer | |
| Address1 | 593 EIGHTH ST | Policy # | | Contact | |
| Address2 | | Primary Insurance Group Name | | Phone | |
| Address3 | | Group # | | Mileage to Closest Hospital | |
| City | Lancaster | Secondary Ins | | | |
| State | TX | Policy # | | | |
| Zip | 75146 | Secondary Insurance Group Name | | | |
| Country | US | Group # | | | |

### Mileage / Delays / Additional Agencies

| Mileage | | Delays | | Additional Agencies |
|---|---|---|---|---|
| Scene | 1.0 | Category | Delays | |
| Destination | 10.7 | Dispatch Delays | None/No Delay | |
| Loaded Miles | 9.7 | Response Delays | None/No Delay | |
| Start | | Scene Delays | None/No Delay | |
| End | | Transport Delays | None/No Delay | |
| Total Miles | | Turn Around Delays | None/No Delay | |

03/28/2019 00:38:32
Template Version: PCR-WEB-1.3.1
Data Version: 00174-0000000002176C49

**Lancaster Fire Department**
Patient Care Record

Name: JIMERSON, KAREN

Incident #: 19-1650

Date: 03/27/2019    Patient 1 of 2

| Patient Transport Details | | | |
|---|---|---|---|
| How was Patient Moved to Ambulance | Stretcher | How was Patient Moved From Ambulance | Stretcher |
| Patient Position During Transport | | Condition of Patient at Destination | Unchanged |

03/28/2019 00:38:32
Template Version: PCR-WEB-1.3.1
Data Version: 00174-0000000002176C49

## Lancaster Fire Department
### Patient Care Record

Name: JIMERSON, JASAMEA

Incident #: 19-1650     Date: 03/27/2019     Patient 2 of 2

### Patient Information

| | | | | |
|---|---|---|---|---|
| Last | JIMERSON | Address | | |
| First | | Address 2 | | |
| Middle | | City | Lancaster | |
| Gender | Female | State | TX | |
| DOB | | Zip | 75146 | |
| Age | | Country | US | |
| Weight | | Tel | 2144975804 | |
| Pedi Color | | Physician | | |
| SSN | | Ethnicity | Not Hispanic or Latino | |
| Race | Black or African American | | | |
| Advance Directives | None | | | |
| Resident Status | Resident | | | |

### Clinical Impression

| | |
|---|---|
| Primary Impression | Injury |
| Secondary Impression | |
| Protocol Used | Multiple Trauma |
| Anatomic Position | |
| Onset Time | |
| Chief Complaint | "my knee hurts" |
| Duration | Units |
| Secondary Complaint | |
| Duration | Units |
| Patient's Level of Distress | |
| Signs & Symptoms | Pain - Knee pain |
| Injury | Struck by Object - Contact with blunt object - Home - 03/28/2019 |
| Mechanism of Injury | |
| Medical/Trauma | Trauma |
| Barriers of Care | None Noted |
| Alcohol/Drugs | None Reported |
| Pregnancy | No |
| Initial Patient Acuity | |
| Final Patient Acuity | |
| Patient Activity | |

### Medication/Allergies/History

| | |
|---|---|
| Medications | None Reported |
| Allergies | No known allergies |
| History | None Reported |
| Last Oral Intake | |

### Vital Signs

| Time | AVPU | Side | POS | BP | Pulse | RR | SPO2 | ETCO2 | CO | BG | Temp | Pain | GCS(E+V+M)/Qualifiers | RTS | PTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23:53 | Alert | R | Sit | 137/86 A | 86 R | 19 R | 97 Rm | | | | | 4 | 15=4+5+6 | 12 | |

### Initial Assessment

| Category | Comments | Abnormalities | |
|---|---|---|---|
| Mental Status | | Mental Status | No Abnormalities |
| Skin | | Skin | No Abnormalities |
| HEENT | | Head/Face | No Abnormalities |
| | | Eyes | No Abnormalities |
| | | Neck/Airway | No Abnormalities |
| Chest | | Chest | No Abnormalities |
| | | Heart Sounds | No Abnormalities |
| | | Lung Sounds | No Abnormalities |
| Abdomen | | General | No Abnormalities |
| | | Left Upper | No Abnormalities |
| | | Right Upper | No Abnormalities |
| | | Left Lower | No Abnormalities |
| | | Right Lower | No Abnormalities |
| Back | | Cervical | No Abnormalities |
| | | Thoracic | No Abnormalities |
| | | Lumbar/Sacral | No Abnormalities |
| Pelvis/GU/GI | | Pelvis/GU/GI | No Abnormalities |
| Extremities | | Left Arm | No Abnormalities |
| | | Right Arm | No Abnormalities |
| | | Left Leg | No Abnormalities |
| | | Right Leg | • Pain |
| | | Pulse | Not Assessed |
| | | Capillary Refill | Not Assessed |
| Neurological | | Neurological | No Abnormalities |

Assessment Time:

Page 1 of 2

03/28/2019 00:39:16
Template Version: PCR-WEB-1.3.1
Data Version: 00141-000000000217GC4F

## Lancaster Fire Department
Patient Care Record

Name: JIMERSON, JASAMEA | Incident #: 19-1650 | Date: 03/27/2019 | Patient 2 of 2

### Narrative

assist pt standing next to her mother. pt stated that she was laying in her bed when a piece of glass from a window hit her in the knee. the pt had no signs of trauma. the pt requested to go to the ER. the pt was moved into the ambulance and monitored en-route with no changes. pt report was given to the ER staff and care was transferred.

### Specialty Patient - CDC 2011 Trauma Criteria

| | | | |
|---|---|---|---|
| Vital Signs | None | Trauma Activation | |
| Anatomy of Injury | None | Time | |
| Mechanism of Injury | None | Date | |
| Special Considerations | None | Trauma level | |
| | | Reason Not Activated | |

### Incident Details / Destination Details / Incident Times

| Incident Details | | Destination Details | | Incident Times | |
|---|---|---|---|---|---|
| Location Type | Home/Residence | Disposition | Transported No Lights/Siren | PSAP Call | 23:28:28 |
| Location | | Transport Due To | Family Choice | Dispatch Notified | |
| Address | | Transported To | Methodist Charleton Medical Center | Call Received | 23:28:28 |
| Address 2 | | Requested By | Law Enforcement | Dispatched | 23:29:39 |
| Mile Marker | | Destination | Hospital | En Route | 23:30:24 |
| City | LANCASTER | Department | Emergency Room | Staged | |
| County | Dallas | Address | 3500 W. Wheatland Road | Resp on Scene | |
| State | TX | Address 2 | | On Scene | 23:36:25 |
| Zip | 75146 | City | Dallas | At Patient | 23:37:00 |
| Country | US | County | Dallas | Care Transferred | |
| Medic Unit | M353 | State | TX | Depart Scene | 23:50:58 |
| Medic Vehicle | M353 | Zip | 75237 | At Destination | 00:08:21 |
| Run Type | 911 Response | Country | US | Pt. Transferred | 00:15:00 |
| Response Mode | Emergent | Zone | | Call Closed | 00:29:50 |
| Shift | A shift | Condition at Destination | Unchanged | In District | |
| Zone | City | Destination Record # | | At Landing Area | |
| Level of Service | Basic Life Support | Trauma Registry ID | | | |
| EMD Complaint | Traumatic Injury | STEMI Registry ID | | | |
| EMD Card Number | | Stroke Registry ID | | | |
| Dispatch Priority | | | | | |

### Crew Members

| Personnel | Role | Certification Level |
|---|---|---|
| BURTON, DANNY | Lead | NREMT-Paramedic (NREMT-P) - P8054608; EMT-Paramedic - 706559 |
| INGRAM, TYLER | Driver | EMT-Paramedic - 731306 |
| EMT Rider, Student | Other | |

### Mileage / Delays / Additional Agencies

| Mileage | | | Category | Delays | Additional Agencies |
|---|---|---|---|---|---|
| Scene | 1.0 | | Dispatch Delays | None/No Delay | |
| Destination | 10.7 | | Response Delays | None/No Delay | |
| Loaded Miles | 9.7 | geo-verified | Scene Delays | None/No Delay | |
| Start | | | Transport Delays | None/No Delay | |
| End | | | Turn Around Delays | None/No Delay | |
| Total Miles | | | | | |

### Patient Transport Details

| How was Patient Moved to Ambulance | Assisted/Walk | How was Patient Moved From Ambulance | Assisted/Walk |
|---|---|---|---|
| Patient Position During Transport | | Condition of Patient at Destination | Unchanged |

Report Letter/Jimerson-Parks case
8  March 2021
page - 22 of 22
----------------------------

# EXHIBIT "H"

**EXHIBIT H** :  (VITA OF ROBERT K. "BOB" GILL ~ (totaling 3 pages)

# ROBERT K. "BOB" GILL

Attorney at Law
Retired State District Judge
2502 Gravel Drive
Fort Worth, TX 76118
Bob@GillBrissette.com
817-803-6918

## PROFESSIONAL ACTIVITIES

Assistant Criminal District Attorney-- Tarrant County 1981-92 and 2008-2014
Private Criminal Defense Practice Since January 2015
Presiding Judge, 213th Criminal District Court-- Jan. 1993-May 2007
Presiding Judge over Tarrant County Criminal Courts --1997
Local Administrative Judge-- Tarrant County 1997-98 and 2003-4
Board Certified in Criminal Law since 1988
Approved for Death Penalty Cases in 8th Admin. Judicial Region
Co-owner Third Chair Digital Forensics LLC and Third Chair Technologies LLC – Fort Worth,
Co-owner Third Chair Investigations LLC, Texas License Number C20849
Board Member, Texas Criminal Defense Lawyers Association (2020-2023)

## PROFESSIONAL MEMBERSHIPS

State Bar of Texas, Member, 1981 - Present
Tarrant County Bar Association, Member
Texas Bar Foundation, Life Fellow, 2013 – Present
Texas Criminal Defense Lawyers Association, Member
Tarrant County Criminal Defense Lawyers Association, Member
Texas District and County Attorneys Association, Former Member

## SPEAKING ENGAGEMENTS

Tarrant County Bar Association, *Pre-Trial Motions* (2018)
Southwestern Association of Forensic Scientists *Digital Forensics* (2017)
Tarrant County Medical Examiner's Office, *Current Trends in Forensic Science* (2015)
Tarrant County Criminal Defense Lawyers Association, *Capital Seminar* (2015-2017)
Tarrant County Medical Examiner's Office Grand Rounds, *Digital Forensics* (April 2015)
Tarrant County Criminal Defense Lawyers Association, *Digital Forensics* (March 2015)
Tarrant County Young Lawyers *When Lawyers Run For Office: Ethical Considerations of Political Campaigns* (2013)

The Center For American And International Law *Capital and Non-Capital Training For The Prosecution* (2013)

The Center For American And International Law *Emerging Trends in Capital Trial Prosecution* (2012)

Louisiana District Attorneys Association, *Electronic Discovery* (2012)

State Bar of Texas *Advanced Criminal Law Course* (2011)

Law Enforcement and Emergency Services Video Association *Video Evidence Symposium and Training Conference* (2011)

The Center For American And International Law *Actual Innocence: Establishing Innocence or Guilt* (2010)

Course Director—State Bar of Texas *Advanced Criminal Law Course, Death Penalty Workshop* (2010)

Texas Criminal Defense Lawyers Association, *Sexual Assault Conference* (2010)

Texas District and County Attorneys Association, *Annual Criminal and Civil Law Update* (2010)

State Bar of Texas, *Advanced Criminal Law Course* (2010)

Tarrant County Bar Association, *Ethical Practice of Criminal Law in Tarrant County* (2010)

Course Director—State Bar of Texas, *Advanced Criminal Law Course, Death Penalty Workshop* (2009)

Tarrant County Bar Association, *Trial by Movie* (2009)

Texas Center for the Judiciary, *Capital Murder Seminar* (2008)

Texas Center for the Judiciary, *College For New Judges* (2006)

National Judicial College, *Managing the Capital Case in Texas* (2006)

Texas Center for the Judiciary, *Criminal Justice Conference* (2006)

Texas Wesleyan University School of Law, *Death Penalty Law* (2005)

Texas Criminal Defense Lawyers Association, *Rusty Duncan Criminal Law Seminar* (2000)

Texas Criminal Defense Lawyers Association, *Attacking Forensic Evidence and Child Abuse Seminar* (2001)

Tarrant County Medical Examiner's Office, *Current Trends in Forensic Science* (2001)

Criminal Justice Advocacy Institute, *Jury Selection* (1995)

Leadership Colleyville, *The Tarrant County Justice System* (1995)

Texas Municipal Courts Training Center, *Felony Court Jurisdiction* (1993)

State Bar of Texas, *Sex Drugs and DNA: Use and Abuse of Scientific Evidence* (1991)

Juvenile Justice Seminar, *Gangs Update* (1991)

State Bar of Texas, *Advanced Criminal Law Course* (1990)

State of Oklahoma District Attorneys Council, *DNA Fingerprinting* (1990)

State Bar of Texas, *Practice Skills Course* (1989)

Texas District and County Attorneys Association, *Prosecutor Trial Skills Course* (1988-92)

## LAW-RELATED PUBLICATIONS

*Texas Criminal Lawyers Handbook* – James Publishing (Updated annually)

*Texas Criminal Forms* – James Publishing (Updated annually)

*Interview Rooms: Design for Safety and Utility*—The Police Chief, The Professional Voice of Law Enforcement, November 2013, International Association of Chiefs of Police

*DNA Testing Handbook For Prosecutors* – Texas District and County Attorneys Association – 1990

*Preparing A Case For Trial*—Texas Prosecutor's DWI Trial Manual (1989)